## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. __3:18-cv-2031__ |
| | ) | |
| TRADEBE TREATMENT AND | ) | |
| RECYCLING NORTHEAST, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## <u>CONSENT DECREE</u>

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................................. 1

II.     APPLICABILITY .................................................................................................. 2

III.    DEFINITIONS ...................................................................................................... 3

IV.     CIVIL PENALTY .................................................................................................. 4

V.      RCRA/CAA COMPLIANCE REQUIREMENTS ........................................................ 5

VI.     REPORTING REQUIREMENTS .............................................................................. 6

VII.    STIPULATED PENALTIES .................................................................................... 8

VIII.   FORCE MAJEURE .............................................................................................. 11

IX.     DISPUTE RESOLUTION ...................................................................................... 13

X.      INFORMATION COLLECTION AND RETENTION .................................................... 16

XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .......................................... 18

XII.    COSTS .............................................................................................................. 20

XIII.   NOTICES .......................................................................................................... 20

XIV.    EFFECTIVE DATE .............................................................................................. 21

XV.     RETENTION OF JURISDICTION ........................................................................... 22

XVI.    MODIFICATION ................................................................................................. 22

XVII.   TERMINATION .................................................................................................. 22

XVIII.  PUBLIC PARTICIPATION .................................................................................... 23

XIX.    SIGNATORIES/SERVICE ..................................................................................... 24

XX.     INTEGRATION ................................................................................................... 24

XXI.    FINAL JUDGMENT ............................................................................................. 24

XXII.   26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION .......................................... 25

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed a complaint in this action concurrently with the lodging of this Consent Decree, alleging that Defendant, Tradebe Treatment and Recycling Northeast, LLC, violated the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 - 7671q, and federal regulations issued under the CAA, and violated the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 - 6992k, and federal and authorized state regulations and permits issued under RCRA, at Defendant's hazardous and non-hazardous waste treatment, storage and disposal facilities located at 136 Gracey Avenue in Meriden, Connecticut ("Meriden Facility") and at 50 Cross Street in Bridgeport, Connecticut ("Bridgeport Facility").

Defendant does not admit any facts, interpretations of law, or liability to the United States arising out of the transactions, conditions, operations or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.      JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action and over the Parties to this Consent Decree under 28 U.S.C. §§ 1331, 1345 and 1355; Section 113(b) of the CAA, 42 U.S.C. § 7413(b); and Section 3008(a) of RCRA, 42 U.S.C. § 6928(a).

2.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1395, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 300(a) of RCRA, 42 U.S.C. § 6928(a), because Defendant is operating in Connecticut at the Meriden and Bridgeport Facilities, and its CAA and RCRA violations took place at the Facilities. For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over Defendant and over this Decree and any such action to enforce it, and consents to venue in this judicial district.

3.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2).

## II.      APPLICABILITY

4.      The provisions of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

5.      No transfer of ownership or operation of the Meriden or Bridgeport Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of this Consent Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and the United States Department of Justice in accordance with Section XIII (Notices). Any attempt to transfer ownership or operation of either Facility without complying with this Paragraph constitutes a violation of this Consent Decree.

6.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.      DEFINITIONS

8.      Terms used in this Consent Decree that are defined in the CAA or RCRA, or in regulations issued under these statutes, shall have the meanings assigned to them in these statutes or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Bridgeport Facility" shall mean Defendant's hazardous and non-hazardous waste treatment, storage and disposal facility located at 50 Cross Street in Bridgeport, Connecticut.

"Complaint" shall mean the complaint filed by the United States in this action;

"Consent Decree" or "Decree" shall mean this Decree and Appendix 1 attached hereto;

"Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

"Defendant" shall mean Tradebe Treatment and Recycling Northeast, LLC;

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" shall have the definition provided in Section XIV.

3

"Meriden Facility" shall mean Defendant's hazardous and non-hazardous waste treatment, storage and disposal facility located at 136 Gracey Avenue in Meriden, Connecticut.

"Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

"Parties" shall mean the United States and Defendant;

"TSDF" shall mean a hazardous and non-hazardous waste treatment, storage and disposal facility.

"Section" shall mean a portion of this Decree identified by a roman numeral;

"State" shall mean the State of Connecticut; and

"United States" shall mean the United States of America, acting on behalf of EPA.

## IV.     CIVIL PENALTY

9.      Within 30 Days after the Effective Date, Defendant shall pay a sum of $ 525,000

as a civil penalty.  Failure to timely pay any portion of the civil penalty shall subject Defendant to

interest on the unpaid portion accruing from the date payment is due until the date payment is

made at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

10.     Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer

("EFT") in accordance with instructions provided to Defendant by the United States Department

of Justice or the United States Attorney's Office for the District of Connecticut.  The payment

instructions will include a Consolidated Debt Collection System ("CDCS") number, which

Defendant shall use to identify all payments required to be made in accordance with this Consent

Decree.  The payment instructions will be provided to Defendant's counsel at the following mail

or email address:  Brian C. Freeman, Robinson & Cole LLP, 280 Trumbull Street, Hartford,

Connecticut, 06103, bfreeman@rc.com.  Defendant may change the individual to receive

payment instructions on its behalf by providing written notice of such change to the United States

and EPA in accordance with Section XIII (Notices).

11.    At the time of payment, Defendant shall send notice that payment has been made: (a) to the EPA Finance Office via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio, 45268; (b) to EPA counsel via email or regular mail in accordance with Section XIII; and (c) to the United States via email or regular mail in accordance with Section XIII.  Such notice shall state that the payment is for the civil penalty owed under the Consent Decree in United States v. Tradebe Environmental Services, LLC, and shall reference the case civil action number, CDCS Number and DJ case number 90-5-2-1-11838.

12.    Defendant shall not deduct any penalties paid under this Decree under this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V.    RCRA/CAA COMPLIANCE REQUIREMENTS

13.    Defendant shall comply with the terms set out in Appendix 1 (RCRA/CAA Compliance Requirements), which includes all RCRA and CAA-related compliance requirements relevant to this enforcement action.  Where any compliance obligation under Appendix 1 requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of Section VIII of this Consent Decree (Force Majeure) for any delay in the performance of any such compliance obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval, provided that Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI.    REPORTING REQUIREMENTS

### A.    General Reporting Provisions

14.    Whenever any violation of this Consent Decree or of the environmental statutes, regulations and permits referenced herein, or any other event affecting Defendant's performance under this Decree or the performance of the Meriden or Bridgeport Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.

15.    Unless otherwise specified in this Decree, all reports shall be submitted to the persons designated in Section XIII (Notices).

16.    Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

17.    This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

18.    The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CAA, RCRA, or these statutes' implementing

6

regulations and permits, or by any other federal, State, or local law, regulation, permit, or other requirement.

19.     Any information provided under this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

**B.     Quarterly Progress/Compliance Reports**

20.     Each calendar quarter, Defendant shall provide to EPA a progress report regarding the compliance actions Defendant is required to undertake pursuant to Appendix 1 of this Consent Decree.  The reports shall be due within 10 Days after the end of each calendar quarter, that is, by January 10th, April 10th, July 10th and October 10th.  Defendant shall provide its first progress report on January 10, 2019, for the calendar quarter ending December 31, 2018, except that Defendant may provide this first report no later than 30 Days after the Effective Date if the Effective Date occurs after December 31, 2018, or upon a different date if Defendant and EPA so agree in writing.

21.     Defendant shall continue to provide these progress reports through the calendar quarter in which Defendants completes the compliance activities set out in Sections C and D of Appendix 1, or through the calendar quarter in which the second anniversary of the Effective Date occurs, whichever is later.

22.     Each quarterly progress report shall contain the information required by Section I of Appendix 1.

## VII.   STIPULATED PENALTIES

23.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

24.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall be liable for stipulated penalties of $1,000 per Day for each Day that the payment is late.

25.     Failure to Comply with RCRA/CAA Compliance Requirements.  If Defendant fails to comply with any of the requirements of Sections A through G of Appendix 1 of this Consent Decree, and except as provided otherwise in Paragraph 26 or Paragraph 27, Defendant shall be liable for stipulated penalties for each violation of each such requirement, as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1 to 15 Days |
| $1,000 | 15 to 30 Days |
| $2,500 | 31 Days and beyond |

26.     Failure to Comply with RCRA and CAA Emission Limits.  If Defendant fails to comply with the applicable RCRA and CAA emission limits set out in Paragraph 7 of Section C and in Paragraph 2 of Section A of Appendix 1 of this Consent Decree, Defendant shall be liable for stipulated penalties for each violation of each such emission limit, as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1 to 15 Days |
| $2,500 | 15 to 30 Days |
| $5,000 | 31 Days and beyond |

27.     Failure to Comply with Consent Decree Reporting Requirements.  If Defendant

fails to comply with the reporting requirements set out in Section VI (Reporting Requirements)

and Section I of Appendix 1 of this Consent Decree, Defendant shall be liable for stipulated

penalties for each violation of each such reporting requirement, as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1 to 15 Days |
| $500 | 15 to 30 Days |
| $1,000 | 31 Days and beyond |

28.     Stipulated penalties under this Section shall begin to accrue on the Day a violation

of this Consent Decree first occurs and shall continue to accrue for each Day until the Day upon

which the violation ceases.  Stipulated penalties shall accrue simultaneously for separate

violations of this Consent Decree.  Stipulated penalties shall accrue regardless of whether the

United States has notified Defendant that a violation of this Consent Decree has occurred.

29.     Stipulated penalties shall become due and shall be paid by Defendant, not later

than 30 Days after the United States issues Defendant a written demand for them.

30.     The United States may in the unreviewable exercise of its discretion, reduce or

waive stipulated penalties otherwise due it under this Consent Decree.

31.     Stipulated penalties shall continue to accrue as provided in Paragraph 28, during

any Dispute Resolution regarding stipulated penalties under Section IX, but need not be paid

until the following:

9

a.   If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.   If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.   If any Party appeals the Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

32.   Defendant shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 10, and with the confirmation notices required by Paragraph 11, except that the notices shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

33.   If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

34.   The payment of penalties and interest, if any, under this Section shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

35.   Non-Exclusivity of Remedy.  The stipulated penalty provisions of this Section shall be in addition to all other rights reserved by the United States under Section XI (Effect of Settlement/Reservation of Rights) below.  Nothing in this Section shall be construed as prohibiting, altering or in any way limiting the ability of the United States to seek any other relief

10

it deems appropriate for Defendant's violation of this Decree or of the statutes, regulations or permits referenced within it, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid under this Consent Decree.

## VIII.     FORCE MAJEURE

36.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, which delays or prevents the full performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay or nonperformance, and their adverse effects, are minimized to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

37.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA as soon as possible, but no later than within 5 Days of when Defendant first knew that the event might cause a delay. Within 5 Days thereafter, Defendant shall provide in writing to EPA an explanation and

description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors, knew or should have known.

38.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

39.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

12

40.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 36 and 37. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.     DISPUTE RESOLUTION

41.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

42.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date of sending the Notice of Dispute, unless that period is modified by written agreement or the Parties mutually agree to utilize mediation as described below in this Paragraph. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless,

within 20 Days after the conclusion of the informal negotiation period (or as otherwise provided below for mediation), Defendant invokes formal dispute resolution procedures as set forth below.

Nothing in this Paragraph shall prevent the Parties from utilizing non-binding mediation during the informal negotiations period to attempt to resolve the dispute. Any such mediation shall be mutually agreed to by the Parties; shall use a mediator mutually acceptable to the Parties (with the cost of the mediator to be paid by Defendant); shall extend no longer than 30 Days (unless the Parties agree otherwise); and shall be confidential, such that the Parties, their representatives, and the mediator shall not disclose any information regarding the discussions held during the mediation (including any proposals, offers or terms to resolve the dispute) to the Court or to any third parties. Either Party's decision regarding whether to utilize mediation, or to subsequently withdraw from mediation, shall be in the Party's sole discretion, and shall not be subject to dispute resolution or judicial review under this Consent Decree or in other judicial proceedings.

43.   Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

44.   The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of

Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

45.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 20 Days of receipt of the United States' Statement of Position under the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.  Defendant's motion to the Court shall not raise new issues or submit new facts that were not previously presented to the United States during formal dispute resolution.

46.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

47.     Standard of Review.  In any judicial proceeding under this Section's formal dispute resolution procedures, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and that Defendant is entitled to relief under applicable law. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless Defendant, based on that record, proves that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

48.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent

Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of nonperformance, but payment shall be stayed pending resolution of the dispute as provided in this Section. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

49.    As part of the resolution of any dispute under this Section, in appropriate circumstances the Parties may agree to in writing, or this Court may order, an extension or modification of any schedule for the completion of the work required under this Consent Decree. Defendant shall be liable for stipulated penalties pursuant to Section VII (Stipulated Penalties) for its failure to complete the work in accordance with the extended or modified schedule, provided that Defendant shall not be precluded from asserting that a force majeure event has caused or may cause a delay in complying with the extended or modified schedule.

## X.    INFORMATION COLLECTION AND RETENTION

50.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

    a.    monitor the progress of activities required under this Consent Decree;
    b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;
    c.    obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;
    d.    obtain documentary evidence, including photographs and similar data; and
    e.    assess Defendant's compliance with this Consent Decree.

51.     Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

52.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

53.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the

17

name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated under the requirements of this Consent Decree shall be withheld on grounds of privilege.

54.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

55.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States under applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or State laws, regulations, or permits.

## XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

56.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging of this Consent Decree.  This Consent Decree does not limit any rights or remedies available to the United States for any criminal violations.

57.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Decree.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the

environment arising at, or posed by, Defendant's Meriden and Bridgeport Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

58.     Except as expressly provided in this Section, this Consent Decree shall not be construed to prevent or limit the rights of the United States to obtain penalties or injunctive relief under the CAA and RCRA, any regulations or permits issued under these statutes, or any other federal or State laws, regulations or permits. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Meriden and Bridgeport Facilities, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved under Paragraph 56.

59.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced under any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA or RCRA, or with any regulations or permits issued

under these statutes, or with any other provisions of federal, State, or local laws, regulations, or permits.

60.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

61.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.     COSTS

62.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII.     NOTICES

63.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by email:      eescdcopy.enrd@usdoj.gov
                                       Re: DJ # 90-5-2-1-11838

As to the United States by mail:       EES Case Management Unit
                                       Environment and Natural Resources Division
                                       U.S. Department of Justice
                                       P.O. Box 7611
                                       Washington, D.C.  20044-7611
                                       Re: DJ # 90-5-2-1-11838

20

As to EPA by mail and email:          Steven J. Viggiani
                                      Senior Enforcement Counsel
                                      U.S. Environmental Protection Agency, Region 1
                                      Mail code OES04-3
                                      5 Post Office Square, Suite 100
                                      Boston, Massachusetts 02109-3912
                                      viggiani.steven@epa.gov

As to Defendant by mail and email:    Brian C. Freeman
                                      Robinson & Cole LLP
                                      280 Trumbull Street
                                      Hartford, Connecticut 06103
                                      bfreeman@rc.com

                                      and

                                      Sarah Kowalczyk
                                      General Counsel and Vice President of
                                        Risk Management
                                      Tradebe Environmental Services, LLC
                                      234 Hobart Street
                                      Meriden, Connecticut 06450
                                      sarah.kowalczyk@tradebe.com

64.     Any Party may, by written notice to the other Party, change its designated notice recipient or notice address provided above.

65.     Notices submitted under this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.     EFFECTIVE DATE

66.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.    RETENTION OF JURISDICTION

67.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, under Sections IX (Dispute Resolution) and XVI (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVI.    MODIFICATION

68.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

69.    Any disputes concerning modification of this Decree shall be resolved under Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 47, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.    TERMINATION

70.    After Defendant has completed the requirements of Section V (RCRA/CAA Compliance Requirements), maintained compliance with its applicable RCRA and CAA emission limits while operating thermal oxidizers at the Meriden and Bridgeport Facilities for a period of 2 years, complied with all other requirements of this Consent Decree, and has paid the civil penalty and any outstanding stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

22

71.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

72.     If the United States does not agree that the Decree may be terminated, Defendant may invoke dispute resolution under Section IX. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of its Request for Termination.

## XVIII.    PUBLIC PARTICIPATION

73.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

23

## XIX.    SIGNATORIES/SERVICE

74.    Each Party certifies that at least one of their undersigned representatives is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

75.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  The Parties agree that Defendant need not file an answer or otherwise respond to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX.    INTEGRATION

76.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved under this Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXI.    FINAL JUDGMENT

77.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXII.    26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION

78.    For purposes of the identification requirement of Section 162(f)(2)(a)(ii) of the

Internal Revenue Code, 26 U.S.C. § 162(f)(2)(a)(ii), performance of Section II (Applicability),

Paragraph 6; Section V (RCRA/CAA Compliance Requirements), Paragraph 13 and related

Appendix 1; Section VI (Reporting Requirements), Paragraphs 15-16 and 20-22; and Section X

(Information Collection and Retention), Paragraphs 50-53, is restitution or required to come into

compliance with law.


Dated and entered this 1st day of   February   , 2019


/s/ Kari A. Dooley
_____
UNITED STATES DISTRICT JUDGE

UNITED STATES V. TRADEBE TREATMENT AND RECYCLING NORTHEAST, LLC,
CONSENT DECREE

For Plaintiff, UNITED STATES OF AMERICA:

ELLEN MAHAN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division

By:

BRIAN G. DONOHUE                                    12/12/18
Senior Attorney                                     Date
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611


JOHN H. DURHAM
United States Attorney
District of Connecticut


NDIDI MOSES
Assistant United States Attorney
U.S. Attorney's Office
450 Main Street
Hartford, Connecticut 06103

26

UNITED STATES V. TRADEBE TREATMENT AND RECYCLING NORTHEAST, LLC,
CONSENT DECREE

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


_____          _____
TIM CONWAY                              Date
Acting Director
Office of Environmental Stewardship
U.S. Environmental Protection Agency,
  Region I
Mail Code OES04-5
5 Post Office Square, Suite 100
Boston, Massachusetts 02109-3912


_____          _____
STEVEN J. VIGGIANI                      Date
Senior Enforcement Counsel
Office of Environmental Stewardship
U.S. Environmental Protection Agency,
  Region I
Mail Code OES04-3
5 Post Office Square, Suite 100
Boston, Massachusetts 02109-3912


27

UNITED STATES V. TRADEBE TREATMENT AND RECYCLING NORTHEAST, LLC,
CONSENT DECREE

FOR Defendant, TRADEBE TREATMENT AND RECYCLING NORTHEAST, LLC

_____        _____11-6-18_____
ROBERT O'BRIEN                                  Date
Vice President of Operations and Manager
Tradebe Treatment and
  Recycling Northeast, LLC
1433 E. 83rd Avenue, Suite 200
Merrillville, Indiana 46410

**Appendix 1 to Tradebe Treatment and Recycling Northeast, LLC, Consent Decree:
RCRA/CAA Compliance Requirements**

### A.   General RCRA/CAA Requirements

1.      Defendant shall comply at the Meriden and Bridgeport Facilities with the applicable requirements of Sections 3002, 3004 and 3010 of RCRA, 42 U.S.C. §§ 6922, 6924 and 6930, and with applicable federal and state hazardous waste regulations and permits issued thereunder, including but not limited to RCRA air emission regulations at 40 C.F.R. §§ 264.1050 - 264.1064 ("RCRA Subpart BB") and 40 C.F.R. §§ 264.1080 - 264.1090 ("RCRA Subpart CC") (including without limitation those provisions of 40 C.F.R. §§ 264.1030 - 264.1036 ("RCRA Subpart AA") that are cited and incorporated by reference by RCRA Subparts BB or CC), and other federal hazardous waste regulations, all as incorporated by reference by RCSA §§ 22a-449(c)-102, 22a-449(c)-104, and 22a-449(c)-110. Defendant's obligations to comply with the requirements of RCRA Subparts BB and CC may be modified in accordance with the provisions of 40 C.F.R. §§ 264.1065(m) and 264.1080(b)(7), as incorporated by reference by RCSA § 22a-449(c)-104.

2.      On July 12, 2018, Defendant submitted to CT DEEP separate applications for registration under the General Permit to Limit Potential to Emit ("GPLPE") for the Meriden and Bridgeport Facilities. Connecticut's GPLPE has been approved by EPA under Section 112(l) of the Clean Air Act, which renders the GPLPE federally enforceable for sources of HAPs. *See* 82 Fed. Reg. 18868, 18869 (April 24, 2017). On August 31, 2018, CT DEEP issued separate approvals of registration under the GPLPE for the Meriden and Bridgeport Facilities. The approvals are effective from August 31, 2018, until they (and the GPLPE) expire on November 8, 2020. The approvals limit the emissions of air pollutants from each Facility during each and every consecutive 12 month period to less than 50% of specified quantities of various air pollutants, including less than 50% of aggregate actual emissions or potential emissions, including fugitive emissions, of 10 tons or more per year of any hazardous air pollutant ("HAP"), or 25 tons or more per year of any combination of HAPs.

3.      Defendant shall comply with the terms and requirements of its GPLPE registration approvals at both the Meriden and the Bridgeport Facilities, including but not limited to the HAP emissions limit described in Paragraph 2 above and the monitoring and recordkeeping requirements set out in Sections 5(c) and 5(d) of the GPLPE.

4.      By no later than in its Quarterly Report for the quarter ending on June 30, 2020, Defendant shall inform EPA in writing of its CAA compliance plans for the Meriden and Bridgeport Facilities after November 8, 2020, when the Facilities' GPLPE approvals expire. Defendant shall state whether it plans to seek a permit from CT DEEP containing limits that are federally and practicably enforceable on each Facility's potential to emit HAPs below major source threshold levels; to comply with other federally and practicably enforceable limits on each Facility's potential to emit HAPs below major source threshold levels; to comply with applicable CAA Subpart DD requirements at each Facility; or to take any other approach consistent with applicable CAA requirements.

29

### B.   Existing Regenerative Carbon Adsorption Systems

5.      Until the date that Defendant installs and commences operation of the thermal oxidizers described below in this Appendix for HAP and volatile organic compound ("VOC") air emission control at the Meriden and Bridgeport Facilities, Defendant shall continue to operate, maintain, monitor, and perform recordkeeping and reporting for the existing closed-vent systems and regenerative carbon adsorption control devices at both Facilities in compliance with the applicable requirements of RCRA Subparts BB and CC.

### C.   Thermal Oxidizers and Closed-Vent Systems

6.      By not later than 270 days after the Effective Date, Defendant shall size, purchase, install and commence operation of thermal oxidizers for the control of HAP/VOC emissions from tanks and other equipment or operations at the Meriden and Bridgeport Facilities as described below.  The thermal oxidizers shall replace the Facilities' existing regenerative carbon adsorption systems for HAP/VOC emission control.  All tanks and other equipment or operations (including tanks, equipment and operations not subject to RCRA Subparts BB and CC) whose HAP/VOC emissions are currently being controlled by the Facilities' regenerative carbon adsorption systems shall be controlled through the Facilities' thermal oxidizers and shall be connected to the oxidizers through closed-vent systems.  In addition, HAP/VOC emissions from the operation of the bulk loading/unloading area (which area does not include the degrit tank system) at the Bridgeport Facility shall be controlled through the Bridgeport Facility's thermal oxidizer, and shall be connected to the oxidizer through a closed-vent system.

7.      The thermal oxidizers at the Meriden and Bridgeport Facilities shall comply with the applicable emissions standards set out in 40 C.F.R. § 264.1033(c), as incorporated by reference by RCSA § 22a-449(c)-104.

8.      The closed-vent systems referenced in Paragraph 6 above shall comply with the applicable standards for such systems set out in 40 C.F.R. § 264.1033(k), as incorporated by reference by RCSA § 22a-449(c)-104.

9.      By no later than the date that the thermal oxidizers commence operation at each Facility, Defendant also shall install and commence operation of a continuous monitoring system at each Facility to measure and record the temperature downstream of the combustion zone as required by 40 C.F.R. §§ 264.1087(c)(7) and 264.1033(f)(2)(i).  Temperature data from these continuous monitoring systems shall be used to establish operating parameter values based on values measured during the thermal oxidizers' performance tests, consistent with the requirements of 40 C.F.R. §§ 264.1035(b)(2)(ii), (b)(3), and (c)(2).

10.     By the date specified in Paragraph 9 above, or by another date specified in Defendant's performance test plan approved under Section D below, Defendant also shall conduct initial leak detection monitoring of the closed-vent systems in accordance with 40 C.F.R. §§ 264.1033(l)(1)(i) and 264.1034(b), as incorporated by reference by RCSA § 22a-449(c)-104.  During this initial leak detection monitoring, Defendant shall also conduct leak detection monitoring of the tanks listed in Paragraph 40(e) of Section G below.

### D. Performance Testing

11.    Defendant shall conduct a performance test on the closed-vent system and thermal oxidizer installed at the Meriden Facility and at the Bridgeport Facility in order to demonstrate that the oxidizer and closed-vent system at each Facility comply with the standards referenced in Section C above.

12.    Defendant's performance tests on the closed-vent system and thermal oxidizer at the Meriden Facility and the Bridgeport Facility shall be conducted in accordance with written performance test plans approved by EPA on the schedule set out below.

13.    By not later than 330 days after the Effective Date, or by no later than 60 days after the closed-vent systems and thermal oxidizers at the Meriden and Bridgeport Facilities commence operation, whichever is sooner, Defendant shall prepare and provide to EPA a draft of a written performance test plan for the closed-vent system and thermal oxidizer at each Facility that meets the applicable requirements for a performance test plan set out at 40 C.F.R. § 264.1035(b)(3).  Pursuant to 40 C.F.R. § 264.1035(b)(3)(i), each of the draft performance test plans shall describe how the planned test will be conducted during operating conditions of highest load or capacity level reasonably expected to occur, and shall also include estimated or design flow rates, organic content of each incoming stream, and definitions of acceptable operating ranges of process and control device parameters during the test.  The draft test plan shall also include all applicable performance testing requirements set out in 40 C.F.R. §§ 264.1034(b) and (c)(1) through (c)(4).

14.    Within 60 days after the receipt of each draft site-specific performance test plan, EPA shall approve or comment on each plan.  During this 60-day period, Defendant and EPA may hold a conference call or face-to-face meeting to discuss the draft plan.  If EPA comments on a draft plan, or on any revised plan, and subject to the dispute resolution procedures provided in Section IX of the Consent Decree, Defendant shall incorporate EPA's comments and re-submit a revised plan to EPA within 30 days of receiving the comments.  EPA shall approve or comment on the revised plan within 30 days after receiving it.  If EPA does not provide comments within any of the time periods specified above, then the draft plan or revised plan shall be deemed approved by EPA.

15.    Within 90 days after EPA's approval of a site-specific performance test plan for either the Meriden Facility or the Bridgeport Facility, Defendant shall schedule and conduct the performance test at the relevant facility in accordance with the facility's approved plan.  At least 60 days prior to the scheduled test, Defendant shall provide a notification of the performance test to EPA.  EPA may choose, in its discretion, to observe any or all aspects of the test.

16.    Within 60 days after completing each performance test, Defendant shall submit a test report to EPA that includes, among other things, all performance test and leak detection test results, as required by 40 C.F.R. § 264.1035(b)(4)(ii) and (vi) and by 40 C.F.R. § 264.1089(e)(1)(iii); Defendant's certification regarding control device operation at the level documented by each performance test when the tanks or other equipment would be operating at

capacity or the highest level reasonably expected to occur, in accordance with 40 C.F.R.
§ 264.1089(e)(1)(i); and all information, data and analysis required to be included in the report
by the approved test plan. If the Meriden or Bridgeport Facility's closed-vent system and
thermal oxidizer do not comply with the requirements set out in Section C above, Defendant
shall provide EPA with a detailed description of the actions Defendant has taken, or will take, to
comply with the requirements.

### E.   Meriden-Specific RCRA Measures

17.     **Meriden TSDF Permit.**  For purposes of this Section E, "Meriden's TSDF
Permit" or "Permit" means the Commercial Hazardous Waste, Connecticut 22a-454 Wastes and
Used Oil Facility Permit issued by CT DEEP to Defendant regarding the Meriden Facility on
September 18, 2012, including all attachments thereto, and any subsequent such permits or
permit amendments issued by CT DEEP to Defendant containing any of the same substantive
terms as those cited in Meriden's TSDF Permit in this Section.

18.     **Facility Site Security.**  Defendant shall minimize the possibility for the
unauthorized entry of persons into the active portion of Meriden Facility, including ensuring that
all access gates to any portion of the Facility are locked when not in use, or otherwise controlling
entry at all times through gates or other entrances to the Facility in accordance with Section
IV(D) of Meriden's TSDF Permit.

19.     **Hazardous Waste Storage at Authorized Locations.**  Defendant shall store
hazardous wastes subject to Meriden's TSDF permit at the Meriden Facility only in the locations
designated for such storage in Meriden's TSDF Permit. Defendant shall not park trucks or
trailers containing hazardous waste in any unauthorized locations adjacent to the Meriden
Facility.

20.     **Hazardous Waste Release Reporting.**  Defendant shall report any spills or
releases to the environment from the Meriden Facility to CT DEEP both orally and in writing as
required by Meriden's TSDF Permit at Sections III(A)(16) - (17) and the Permit's attached
Contingency Plan. Defendant shall immediately provide oral notice by telephone of such
spills/releases to CT DEEP's Emergency Response and Spill Prevention Division, and within 15
days thereafter shall provide a written report to CT DEEP's Waste Engineering and Enforcement
Division. All spill reports filed with CT DEEP must be kept on-site in the Meriden Facility's
operating records.

21.     **Inspections for Malfunctions or Deteriorating Conditions That May Cause
Hazardous Waste Releases, and Necessary Remedial Action.**  Defendant shall (a) conduct all
inspections at the Meriden Facility required by the Meriden's TSDF Permit at Sections
III(A)(24) and IV(E), and by the Permit's attached Inspection Plan, including inspecting the
Meriden Facility for malfunctions and deteriorations, operator errors and discharges that may
cause or may lead to hazardous waste releases to the environment or threats to human health; (b)
remedy any deterioration or malfunction of equipment or structure on a schedule which ensures
that the problem does not lead to an environmental or human health hazard (or take immediate
remedial action where the hazard is imminent or has already occurred); and (c) ensure that
inspection records (on the forms required by the Inspection Plan) are maintained at the Meriden

Facility for at least three years. Defendant certifies that on or about April 15, 2015, April 24, 2015, and May 25, 2018, it has repaired cracks, repaved graveled areas, and repaired other cracked, broken or graveled pavement in the Meriden Facility's Duffy Avenue Yard and Duffy Avenue Yard Storage Area.

22.     **Maintenance of Tank Overflow Protection Equipment.** Defendant shall ensure that all overfill prevention control equipment for the waste storage tanks in the Meriden Facility's Tank Farm Area are properly maintained and operated, as required by Sections I(E)(5) and III(B)(3)(b) of Meriden's TSDF Permit.

23.     **Tank Integrity Assessment.** Defendant certifies that it has obtained and submitted for CT DEEP approval, and has provided EPA with a copy of, a written assessment, which has been reviewed and certified by an independent, qualified registered professional engineer, attesting that Tank O-7 at the Meriden Facility has sufficient structural integrity and is acceptable for storing hazardous waste, as required by Meriden's TSDF Permit at Section III(B)(3)(d) and by RCSA § 22a-449(c)-110(a)(1), which incorporates 40 C.F.R. § 270.16. Defendant shall maintain and keep on file a copy of Tank O-7's tank integrity assessment at the Meriden Facility.

24.     **Subpart CC Hazardous Waste Tank Management.** Defendant shall ensure that all hazardous waste storage tanks at the Meriden Facility that are subject to RCRA Subpart CC, including but not limited to all such tanks in the Facility's Tank Farm Area building, Tank O-7, and the Degrit Tank System, are in compliance with all applicable RCRA Subpart CC tank standards as required by Meriden's TSDF Permit at Section IV(R)(2)(a), which incorporates 40 C.F.R. § 264.1084 as modified by RCSA §§ 22a-449(c)-104(a)(2), and RCSA § 22a-449(c)-104, which incorporates 40 C.F.R. Part 264, including RCRA Subpart CC.

25.     **Subpart BB Inspections.** Defendant shall perform all inspections required by RCRA Subpart BB for all Subpart BB-subject equipment associated with all hazardous waste storage tanks at the Meriden Facility, including but not limited to Tank O-7, as required by Meriden's TSDF permit at Section IV(Q), which provides that Defendant shall comply with RCRA Subpart BB, including inspection requirements at 40 C.F.R. §§ 264.1052 - 264.1058, and RCSA Section 22a-449(a)-104, which incorporates 40 C.F.R. Part 264, including RCRA Subpart BB.

26.     **Minimizing Threats from Hazardous Waste Releases.** Defendant shall maintain and operate the Meriden Facility so as to prevent or minimize the possibility of any unplanned release of hazardous waste or waste constituents into air, soil, surface water or ground water that could threaten human health or the environment, as required by Meriden's TSDF Permit at Section IV(H)(1), and by RCSA § 22a-449(a)-104, which incorporates 40 C.F.R. § 264.31. Defendant shall ensure that the spill control/decontamination equipment listed in Section 10.12 of the Permit's attached Contingency Plan is maintained on-site at the locations and in the minimum amounts stated in the Contingency Plan. Defendant shall also ensure that outside parking lots and outside areas of the Facility where hazardous waste-containing trucks are parked or stored, including but not limited to the Duffy Avenue Yard, the Duffy Avenue Yard Storage Area, and the siding/parking area near the Facility's Receiving Office, are paved

and maintained so as to prevent any hazardous waste spills in these areas from migrating into soil or ground water.

27.     **Contingency Plan Maintenance.** Defendant shall maintain an up-to-date Contingency Plan at the Meriden Facility containing all emergency response-related information required by Meriden's TSDF Permit at Sections IV(I)(2) and IV(I)(4), including but limited to an up-to-date list of Facility emergency coordinators and an accurate list of emergency response equipment.

28.     **Hazardous Waste Personnel Training.** Defendant shall ensure that Meriden Facility personnel receive hazardous waste training in accordance with Meriden's TSDF Permit at Section IV(F) and with the Permit's attached Personnel Training Plan. Defendant shall also ensure that untrained employees do not handle, manage or become involved in activities involving hazardous waste. Defendant shall maintain on-site detailed training records in the Meriden Facility's operating record.

29.     **Quality Assurance/Quality Control Protocols or Plans for Laboratory Operations.** Defendant shall maintain a protocol or a quality assurance/quality control ("QA/QC") laboratory analysis plan for the on-site analysis of waste at the Meriden Facility, in accordance with Meriden's TSDF Permit at Section IV(C)(1) and the Permit's attached Waste Analysis Plan at Section 1(j), and RCSA § 22a-449(a)-104, which incorporates the requirements of 40 C.F.R. § 264.13. Defendant's QA/QC protocols or plans shall include all information and procedures required by 40 C.F.R. § 264.13 to ensure appropriate on-site analysis of waste by the Meriden Facility's laboratory operations.

30.     **Closed-Vent System and Control Device Standards.** Defendant shall comply with all applicable closed-vent system and control device requirements in RCRA Subparts BB and CC, including but not limited to emission limits and monitoring, recordkeeping and reporting requirements, for all closed-vent systems and control devices used to control air emissions from hazardous waste storage tanks or other equipment or operations at the Meriden Facility.

### F.  Bridgeport-Specific RCRA Measures

31.     **Bridgeport TSDF Permit.** For purposes of this Section F, "Bridgeport's TSDF Permit" means the Commercial Hazardous Waste and Used Oil Facility Permit issued by CT DEEP to Defendant regarding the Bridgeport Facility on September 28, 2011, including all attachments thereto, and any subsequent such permits or permit amendments issued by CT DEEP to Defendant containing any of the same substantive terms as those cited in Bridgeport's TSDF Permit in this Section.

32.     **Hazardous Waste Storage at Authorized Locations.** Defendant shall store hazardous wastes subject to Bridgeport's TSDF permit at the Bridgeport Facility only in locations designated for such storage in Bridgeport's TSDF permit. Defendant shall not store totes containing such hazardous waste in locations near the former oil shredder area adjacent to

the secondary containment system for Tanks T-5 through T-11, or in any other unauthorized locations at the Bridgeport Facility.

33.    **Hazardous Waste Release Reporting.** Defendant shall report any spills or releases to the environment from the Bridgeport Facility to CT DEEP both orally and in writing as required by Bridgeport's TSDF Permit at Sections III(A)(15) - (16) and the Permit's attached Contingency Plan. Specifically, Defendant shall immediately provide oral notice by telephone of such spills/releases to CT DEEP's Emergency Response and Spill Prevention Division, and within 15 days thereafter shall provide a written report to CT DEEP's Waste Engineering and Enforcement Division. All spill reports filed with CT DEEP must be kept on-site in the Bridgeport Facility's operating records.

34.    **Inspections for Malfunctions or Deteriorating Conditions That May Cause Hazardous Waste Releases, and Necessary Remedial Action.** Defendant shall (a) conduct all inspections at the Bridgeport Facility required by the Bridgeport's TSDF Permit at Sections III(A)(23) and IV(E), and by the Permit's attached Inspection Plan, including inspecting the Bridgeport Facility for malfunctions and deteriorations, operator errors and discharges that may cause or may lead to hazardous waste releases to the environment or threats to human health; and (b) remedy any deterioration or malfunction of equipment or structure on a schedule which ensures that the problem does not lead to an environmental or human health hazard (or take immediate remedial action where the hazard is imminent or has already occurred); and (c) ensure that inspection records (on the forms required by the Inspection Plan) are maintained at the Bridgeport Facility for at least three years.

35.    **Tank Integrity Assessments.** Defendant certifies that it has obtained and submitted for CT DEEP approval, and has provided EPA with a copy of, written tank integrity assessments for Tanks T-1 through T-4 at the Bridgeport Facility, which have been reviewed and certified by an independent, qualified professional engineer, as required by Bridgeport's TSDF Permit at Section III(B)(iii)(3), and RCSA § 22a-449(c)-110(a)(1), which incorporates 40 C.F.R. § 270.16. Defendant shall maintain and keep on file copies of the above-required certified tank integrity assessments at the Bridgeport Facility.

36.    **Subpart BB Compliance for Tanks T-1 through T-4.** Defendant shall  manage Tanks T-1 through T-4 as hazardous waste tanks "in light liquid service" as that term is defined in RCRA Subpart AA at 40 C.F.R. at 40 C.F.R. § 264.1031, and shall comply with all applicable RCRA Subpart BB requirements for these tanks and equipment associated with them, in accordance with Bridgeport's TSDF permit at Section III(B)(iii)(16), which provides that Defendant shall manage these tanks in compliance with RCRA Subpart BB, and as required by RCSA § 22a-449(c)-104, which incorporates 40 C.F.R. Part 264, including RCRA Subpart BB.

37.    **Subpart BB Recordkeeping.** Defendant shall maintain records of air emissions equipment monitoring activities on-site in the Bridgeport Facility's operating record, including but not limited to the dates of RCRA Subpart BB tagged equipment inspections, as required by Bridgeport's TSDF Permit at Section IV(R)(2)(c). Defendant shall keep these records on-site in the Bridgeport Facility's operating record and shall have them available for EPA or CT DEEP review.

38.    **Contingency Plan Maintenance.** Defendant shall maintain an up-to-date Contingency Plan at the Bridgeport Facility containing all emergency response-related information required by Bridgeport's TSDF Permit at Sections IV(I)(2) and (IV)(I)(4), including but limited to an up-to-date list of Facility emergency coordinators.

39.    **Closed-Vent System and Control Device Standards.** Defendant shall comply with all applicable closed-vent system and control device requirements in RCRA Subparts BB and CC, including but not limited to emission limits and monitoring, recordkeeping and reporting requirements, for all closed-vent systems and control devices used to control air emissions from hazardous waste storage tanks or other equipment or operations at the Bridgeport Facility.

### G.   VOC/HAP Reduction Measures

40.    Defendant shall adopt the following additional VOC/HAP emissions reduction measures at the Facilities from no later than the Effective Date (or as otherwise specified in this Section) through the calendar quarter in which the second anniversary of the Effective Date occurs:

    a.    By no later than 60 Days after the Effective Date, Defendant shall use a leak detection threshold of 500 ppm above background for all tanks, closed-vent systems, piping, ducts, joints, seams, flanges, connectors, pumps, valves, pressure relief devices, and all other equipment or operations at the Facilities for which leak detection monitoring is required by RCRA Subparts BB and CC, and this Paragraph 40.

    b.    By no later than 60 Days after the Effective Date, Defendant shall use only flame ionization detectors ("FIDs"), calibrated and used in accordance with EPA Method 21 procedures by Facility personnel trained in such procedures, to perform all required leak detection monitoring required by applicable sections of RCRA Subparts BB and CC, and this Paragraph 40. If the FID at either Facility is temporarily out of service because of malfunction (except when such malfunction results from lack of required maintenance), Defendant may use a photoionization detector, calibrated and used in accordance with EPA Method 21 procedures by Facility personnel trained in such procedures, until the FID is returned to service. Defendant shall use best efforts to return the FID to service as quickly as possible.

    c.    Defendant shall maintain, or shall, by no later than 90 days after the Effective Date, install and maintain, fixed roofs with closure devices with no visible cracks, holes, gaps or other open spaces in the roof, or in the closure devices when they are secured in the closed position, for the following tanks: Tank R-1, and Tanks DT-1 through DT-3 at the Meriden Facility; and Tanks TK-1A, TK-1B, and TK-2 at the Bridgeport Facility. Whenever VOC/HAP-containing

36

material is stored in these tanks, the tanks' closure devices may be opened only in the circumstances described in 40 C.F.R. § 264.1084(c)(3).

d.     By no later than 120 days after the Effective Date, Defendant shall install a cover on the Bridgeport Facility's degrit tank unit that shall enclose the unit except for the area immediately around the unit's solids conveyor.

e.     Defendant shall conduct leak detection monitoring quarterly on all system components, joints, seams, and other connections or equipment that are part of the closed-vent systems connected to the thermal oxidizers, and shall also conduct leak detection monitoring quarterly on the following tanks in the Wastewater Treatment Area buildings at the Meriden Facility whose HAP/VOC emissions are being routed through the closed-vent system to the oxidizers: Tanks WT-1 through WT-5, A-8, A-9, O-7, U-1, U-2, TT-1 through TT-3, and DT-1 through DT-3.

f.     For any leak detected pursuant to this Paragraph 40 (except as otherwise provided in Paragraph 40(g) below), Defendant shall make a first attempt to repair the leak within no later than five calendar days after detection, and shall repair the leak within no later than 15 calendar days after detection. After each repair attempt, Defendant shall use a FID to perform leak testing in accordance with EPA Method 21 to determine if the repaired component has returned to a condition of less than 500 ppmv above background. Delayed repairs shall be managed in accordance with the applicable standards of 40 C.F.R. § 264.1059.

g.     Defendant shall conduct leak detection monitoring monthly on all pressure relief devices associated with any tank or other equipment or operations controlled through either Facility's closed-vent system and control device. If a leak is detected, Defendant shall return the pressure relief device to a condition of below 500 ppmv above background as soon as practicable but no later than within 5 calendar days after such release, in accordance with the applicable requirements of 40 C.F.R. § 264.1054.

### H.  Tank Overfill Prevention Controls at Meriden Facility

41.     By no later than 150 days after the Effective Date, Defendant shall purchase, install and commence operation of a new telemetry system for tank level monitoring with high level alarms to replace the Meriden Facility's current bubble system for overfill prevention control of the waste storage tanks located in the Meriden Facility's Tank Farm Area. The bubble system shall continue to be properly maintained and operated until it is replaced by the new telemetry system.

37

### I.   Quarterly Progress/Compliance Report Requirements

42.      As required by Section VI.B of this Consent Decree, Defendant shall provide quarterly progress/compliance reports ("Quarterly Reports") to EPA, with one or more copies provided at the same time to the CT DEEP at addresses to be provided by EPA, regarding Defendant's compliance with the requirements of Appendix 1 at the Meriden and Bridgeport Facilities.  Each Quarterly Report shall be certified in accordance with Paragraph 16 of this Consent Decree.  Defendant may choose to submit separate Quarterly Reports for each Facility, and, if so, each report shall comply with the requirements of Section VI.B of the Decree and this Section I.

43.      Each Quarterly Report shall contain, to the extent applicable, a summary of Defendant's compliance during the quarter with Section A of Appendix 1 at the Meriden and Bridgeport Facilities, including:

     a.     a statement of Defendant's compliance with Paragraph 1 of Section A, including a description of any noncompliance with any of the Meriden and Bridgeport TSDF Permit requirements set out in Section E and F of Appendix 1 and the actions taken to correct the noncompliance;

     b.     a statement of Defendant's compliance with Paragraph 3 of Section A, including a description of any noncompliance with the GPLPE approvals' HAP emission limits at either the Meriden or Bridgeport Facilities, and the actions taken to correct the noncompliance; and

     c.     in the Quarterly Report for the quarter ending on June 30, 2020, and in accordance with Paragraph 4 of Section A, a statement of Defendant's plans for compliance with applicable CAA regulations and permits after November 8, 2020, when the Meriden and Bridgeport Facilities' GPLPE approvals are set to expire.

44.      Each Quarterly Report shall also contain, to the extent applicable, the following information:

     a.     a detailed description of Defendant's activities undertaken to size, purchase, install and operate the thermal oxidizers and associated closed-vent systems for the control of HAP/VOC emissions at the Meriden and Bridgeport Facilities as required by Section C of Appendix 1, with specific reference to any performance deadlines occurring in the quarter;

     b.     a detailed description of Defendant's activities undertaken to conduct performance testing on the new thermal oxidizers and associated closed-vent systems as required by Section D of Appendix 1, with specific reference to any performance deadlines occurring in the quarter; and

     c.      a summary of Defendant's compliance with Section G of Appendix 1 at the Meriden and Bridgeport Facilities, including a list of all leaks detected in the quarter under the leak detection monitoring required by Paragraphs 40(e) and (g), with the dates of detection and repair (and an explanation for any delay in repair under Paragraph 40(f)) for each leak.

45.     Defendant's first and second Quarterly Reports shall also contain, to the extent applicable, a detailed description of the initial actions taken by Defendant to comply with the requirements of Sections G and H of Appendix 1, including:

     a.      a description of the FIDs purchased or made available for use by Facility personnel, and any EPA Method 21 training provided to Facility personnel, in accordance with Paragraph 40(b) of Section G; and

     b.      a description of Defendant's actions taken to maintain (or where applicable, install and maintain) fixed roofs with closure devices for certain listed tanks in accordance with Paragraph 40(c) of Section G, including the costs of such maintenance/installation;

     c.      a description of Defendant's actions taken to install a cover on the Bridgeport Facility's degrit tank unit in accordance with Paragraph 40(d) of Section G, including a detailed description of the new cover and its costs; and

     d.      a description of Defendant's actions taken to purchase, install and commence operation of the new tank level monitoring system described in Section H for overfill prevention control of the waste storage tanks located in the Meriden Facility's Tank Farm Area, including a description of the specific system purchased (make, model), the system's costs for equipment and installation, and the date(s) of installation and commencement of operation.